## Estate of Samuel Hartman. Appeal of Solomon Hartman.

*Will—Gift for life without limitation over.*

The gift of money for life, without any limitation over, and without the intervention of a trustee, with power to use the corpus is a bequest absolute.

In the case at bar the bequest was as follows: "I give and bequeath unto my brother Samuel Hartman the sum of one hundred dollars, this is besides the Five Hundred and thirty-five dollars which I have already given him, and the last mentioned amount is just to have the use of it without interest as long as he lives unless he really stands in need in that case is allowed to use the principal, or as much as is needed."

Argued March 15, 1899.   Appeal, No. 29, March T., 1899, by Solomon Hartman, executor of Mary VanDyke, from decree of O. C. Adams Co., Nov. 15, 1898, dismissing exceptions to and confirming first and supplemental reports of auditor, appointed to make distribution of the balance in the hands of the executor of the last will of Samuel Hartman, deceased.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Affirmed.   Opinion by SMITH, J.

Exceptions to auditor's report.   Before SWOPE, P. J.

The facts sufficiently appear from the following portion of the opinion of the court below:

A number of exceptions were filed to above reports but they may be all readily resolved in the following: The claimed error of failing to distribute to Solomon Hartman, executor of the will of Mary VanDyke, deceased, the sum of $535.

Samuel Hartman and Mary VanDyke were brother and sister. She was a widow without children and he a bachelor. They were both elderly people and Mary lived with Samuel. She was not a charge upon him but paid her board. Samuel had a physical weakness which precluded his ever marrying. The relation between this widowed sister and bachelor brother was continuous, close and friendly. Mary VanDyke died testate May 1, 1893. Samuel Hartman died testate October 21, 1895.

At the time of Mrs. VanDyke's death she and her brother Samuel were living together on a property in Arendtsville, Adams county, the title to which was in Samuel. In 1892 Samuel and Mary held joint title to a house and lot in Arendtsville. March 30, 1893, they sold and conveyed this property to Jesse B. Spahr for the sum of $500. The same day, March 30, 1893, Jesse B. Spahr and wife conveyed to Samuel Hartman, a piece of real estate in Arendtsville, upon which Samuel and Mary lived when she died, for the consideration of $1,625. Five hundred dollars of the $1,625 was paid by the conveyance of the lot owned by Samuel and Mary and the balance was paid in cash by Samuel.

The auditor finds " from very clear and satisfactory evidence that $250 of Mrs. VanDyke's money, being the half interest in the property sold to Spahr for $500 passed into Samuel Hartman's possession and control March 30, 1893."

The auditor also finds, " at some time before the 7th day of April, 1893 (the date of Mrs. VanDyke's will, but exactly when no one seems to know), Mrs. VanDyke turned over, transferred, delivered to or gave to her brother, Samuel Hartman, two hundred and eighty-five dollars ($285) or enough to make the entire amount passing from her to him $535. The manner and time as well as the character of this transaction have not been made plain by the testimony. The fact, however, of Mr. Hartman having received the equivalent of $535 from his sister, Mrs. VanDyke, at some time was not disputed, and from all the evidence in the case, we find that before or about the time of taking title to the Spahr property, Samuel Hartman had received from Mary VanDyke, money or property amounting to $535. There is no testimony at all that any receipt, note, bond, written acknowledgment or other evidence of indebtedness of any character was taken by Mrs. VanDyke from her brother, Samuel Hartman, for this sum or any part of it. So far as we can gather from the testimony and the circumstances, whatever agreement, understanding, arrangement or contract (by whatever name the same may be designated) was entered into by these two people as to this money or property, was consummated by them in private. Whether the transaction amounted to a gift or was a loan, it seems to us, is the problem that lies before us."

On March 22, 1893, Mary VanDyke executed a will which was written by Squire Thomas at the request of Samuel Hartman and which was found among his papers after his death. The will is brief and is as follows:

"I give and bequeath unto Samuel Hartman (my brother) the sum of Five Hundred and thirty-five dollars ($535) to be paid to him on April 1, A. D. 1893, of the first money that is paid in of my estate. And in case my life is spared until the above date then I will pay said Five Hundred and thirty-five dollars ($535) to my said brother Samuel Hartman to be paid on the property now bought from J. B. Spahr in Arendstville. And my said brother is to have the use of said amount as long as he lives without interest, and after his death if any is left is to be paid to my lawful heirs. My said brother is to have the right to use the principal of said amount, in case he is in need."

Some oral testimony was also taken in reference to the above "agreement, understanding, arrangement or contract," and from it all, the auditor concludes that this sum of $535 was furnished Samuel Hartman by Mrs. Mary VanDyke as a gift and not as a loan. In this conclusion of the learned auditor we cannot agree.

Having found as a fact that Samuel Hartman, before or about the time of his taking title to the Spahr property, received from Mary VanDyke in money and property the sum of $535, the learned auditor erred, even in the absence of any paper evidence of indebtedness, in casting the burden on the exceptants to prove it a loan. The legal presumption would be that it was such, and the burden would rest upon the estate to establish it as a gift.

From all the facts and circumstances in this case it seems clear, that this sum of money was given by Mary to Samuel neither as an absolute gift, nor as an ordinary loan. We believe Mary reserved such authority and control over that $535, as to justify her testamentary disposition of it, as contained in her will, bearing date April 7, 1893, and which was duly probated after her death. What that disposition is, therefore, constitutes the only question for our determination.

The learned auditor not only concluded that this money was a gift, inter vivos, from Mary to Samuel, but that if such were not the case, that Samuel was made an absolute gift of

the same under her last will and testament; and with his latter conclusion, we find no hesitancy in agreeing.

In her will, her last will, bearing date April 7, 1893, and which was duly probated, she bequeaths as follows in reference to that $535:

" I give and bequeath unto my brother Samuel Hartman the sum of one hundred dollars, this is besides the Five Hundred and thirty-five dollars which I have already given him, and the last mentioned amount is just to have the use of it without interest as long as he lives unless he really stands in need in that case is allowed to use the principal, or as much as is needed."

This is a gift of money for life, without any limitation over, and without the intervention of a trustee. As remarked by Mr. Justice PAXSON in Merkel's Appeal, 109 Pa. 235, there is a line of decisions in this state which holds that such a bequest is absolute: Smith's Appeal, 23 Pa. 9; Brownfield's Estate, 8 Watts, 465; Diehl's Estate, 12 Casey, 120; Silknitter's Appeal, 45 Pa. 365; Grove's Estate, 58 Pa. 429; Shriver v. Cobeau, 4 Watts, 130; Hambright's Appeal, 2 Grant, 320; Sproul's Appeal, 105 Pa. 438; Happenstall's Appeal, 144 Pa. 259; Follweiler's Appeal, 102 Pa. 581; Lininger's Appeal, 110 Pa. 398; Gold's Estate, 133 Pa. 495; Drennan's Appeal, 118 Pa. 176, 188.

We must give effect to the language above cited, unless from the whole context of the will it clearly appears that the testatrix intended to limit her brother to a life interest in this money. "We say clearly appears, for it is not our purpose to grope for, or guess at, the testator's intention: " Merkel's App., supra.

A careful examination of the whole context of Mary Van-Dyke's will not only fails to show such intention, but confirms the conclusion that she meant it to be an absolute gift. The clause in her will immediately preceding the one in question is in the following language: "I give and bequeath unto my brother Jacob Hartman the sum of Two hundred dollars to have the use of it without interest as long as he lives and after his death the same is to be paid to his son J. Frank Hartman and is to be used to send J. F. Hartman's George to school." Here there is a limitation over, and no authority to use the corpus. With the same ink she disposes of the $535 she has given to Samuel, with no limitation over, and with authority

to use the corpus. As remarked by the learned auditor this is very significant, and shows her ability to create a life estate in legal form, when she so desires it. We may also remark that in her will dated March 22, 1893, there was a limitation over, which she seems to have purposely dropped from her last will and testament bearing date April 7, 1893.

The entire will shows an evident desire not to die intestate in reference to any of her property. The will contains a residuary clause, but it refers only to the rest of her estate not previously mentioned: Sproul's Appeal, 105 Pa. 438.

It is claimed by the exceptants that no trustee was appointed of this fund because Samuel had the money. The failure to appoint a trustee is only indicative of an intention not to separate the principal from the corpus of the fund. But here Samuel had the corpus. It had been given to him in Mary's lifetime without her taking any paper evidence of indebtedness whatever.

Suppose the money had not been given to him before her death, but he was to receive it only under her will with the use of it for life, with no trustee appointed, with no limitation over, and with authority to use the corpus if in need, there would be no interest in remainder that could require security for the same. He alone would be the judge of his wants, and as the testatrix trusted him, so must all others: Hambright's Appeal, 2 Grant, 320.

Ritter's Estate, Shissler's Appeal, 148 Pa. 577, relied upon by the exceptants as an analogous case, is by no means similar to the one in hand. There there was a bequest of the interest of $1,000 during life, to be paid annually from the testator's death. The bequest was only for interest. The principal was not bequeathed, and the plain intent was to separate the one from the other.

The language of the bequest, as before mentioned, vests an absolute estate in the $535. After seeking to give effect to every part and harmony to the whole of Mary VanDyke's will, we discover no intention to give him but a life estate in the same, but if there was doubt as to her general intention, it should be resolved in favor of the legatee: Sproul's Appeal, 105 Pa. 438.

For reasons given above we dismiss the exceptions and confirm the distribution of the auditor.

Solomon Hartman appealed.

*Errors assigned* among others were (6) in holding that the reference to the $535 in the last will of Mary VanDyke, was such a gift of the money for life without limitation and without the intervention of a trustee as to make the bequest absolute. (7) In reaching the conclusion that the intention of Mary VanDyke as appears by her will was that the bequest of the $535 should be an absolute gift. (11) In not having distributed $535 to Solomon Hartman, executor of the will of Mary Van-Dyke, deceased.

*Wm. McClean*, with him *Wm. Arch. McClean*, for appellant.— The court below failed to distinguish from the circumstances of the present case the cases cited in support of the position that a gift of money for life without any limitation over and without the intervention of a trustee is an absolute bequest.

The court below failed to distinguish that the present case is not a "gift of money," so much tangible property to be delivered over to Samuel Hartman by the executor of Mary VanDyke. At the time of the death of Mary VanDyke the $535 was not so much money to be delivered over to the legatee, but was an amount that had been already invested in the purchase money of real estate at the inception of the title thereof, giving an investment of the $535 to Mary VanDyke in the nature of a resulting trust, and out of such a resulting trust as the testatrix would have had in the title of the real estate. By having provided part of the purchase money, she created a trust for life for the use of her brother as long as he lives, so that this provision of the will cannot in any way have the effect of being a gift of money for life delivered over to the legatee as is meant in the cases cited by the court below.

The circumstances of the present case, though without the intervention of a trustee, presents the separation and setting apart of a fund invested in land in trust, a situation not contemplated in the cases cited. The $535, of which the use is given, is an invested trust in the purchase money of real estate and does not require the intervention of a trustee as in the cases cited.

Next the cases cited are to be distinguished in the absence of any residuary clause as in the present case. In Merkel's Ap-

peal, 109 Pa. 238, the will construed contained no residuary clause; likewise in Smith's Appeal, 23 Pa. 9, Diehl's Estate, 36 Pa. 120, and Grove's Estate, 58 Pa. 429. In Brownfield's Estate, 8 Watts, 465, the residuary clause did not embrace the subject of controversy. In Silknitter's Appeal, 45 Pa. 365, the clause interpreted was the residuary clause. In Cornelia R. Sproul's Appeal, 105 Pa. 438, the residuary clause preceded the construed bequest to the two sons. Shriver v. Cobeau, 4 Watts, 130, is an unambiguous bequest of both interest and principal. Follweiler's Appeal, 102 Pa. 581, is an obiter dictum as to personal property, the entire personalty, see page 583, having been consumed in payment of decedent's debts. And Drennan's Appeal, 118 Pa. 188, is a bequest conditioned upon complying with certain provisions. None of these cases are applicable to the facts of the case in hand.

It is to be specially noted in the present case that while the provision is "unless he really stands in need in that case is allowed to use the principal or as much as is needed," the fact is that at the death of Samuel Hartman no portion of the $535 had been consumed in any way by any needs of the legatee. At death of Samuel Hartman his executor sells the property into which the $535 was put as a trust investment and appropriates the whole of the proceeds to the estate of the legatee, when the $535 having been unconsumed was such assets of the estate of Mary VanDyke, as upon the sale of the property in which the same had been invested, should have come into the hands of her executor to be accounted for by him in accordance with the provisions of her will and the authorities last mentioned.

*J. L. Butt*, for appellees.

OPINION BY SMITH, J., July 28, 1899:

No extended discussion of this case is necessary. The governing principles in its determination have been clearly stated and correctly applied by the learned auditor. His reports rest on these principles, and on the essential facts of the case. It has been approved by the court below, and nothing appears which demands interference on our part. The appeal is therefore dismissed and the decree affirmed.